Johnson, J.
Counsel for plaintiffs in error entertain the view that Sections 15 and 16 of the statute referred to are unconstitutional because they violate Section 35 of Article II and Section 5 of Article XII of the Constitution. Section 35 was adopted in September, 1912, and provides: “For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational diseases, occasioned in the course of such workmen’s employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payments shall be made therefrom, and taking away any or all rights of action or defenses from employes and employers; but no right of action shall be taken away from *78 any employe when the injury, disease or death arises from failure of the employer to comply with any lawful requirement for the protection of the lives, health and safety of employes. Laws may be passed establishing a board which may be empowered to classify all occupations, according to their degree of hazard, to fix rates of contribution to such fund according to such classification, and to collect, administer and distribute such fund, and to determine all rights of claimants thereto.”
The statute referred to was passed under the above provision of the constitution. By Section 13 it is provided that the following shall constitute employers subject to the provisions of the act: “1. The state and each county, city, township, incorporated village and school district therein. .2. Every person, firm, and private corporation including any public service corporation that has in service five or more workmen or operatives regularly in the same business, or in or about the same establishment under any contract of hire, express, or implied, oral or written.” Section 14, subdivision 1, defines the terms “employe,” “workman” and “operative” in the service of the state and its said subdivisions. Section 15 requires the state and its said subdivisions to contribute to the state insurance fund in proportion to the annual expenditure of money by each for the service of persons described in Section 14, and Section 16 provides that the amount to be so contributed by the state itself and its subdivisions shall be, unless otherwise provided by law, a sum equal to one per cent, of the amount expended by the state, and for *79 each county, city, incorporated village, school district, or other taxing district respectively, during the next preceding fiscal year for the services of persons described in subdivision 1 of Section 14. The law requires all other persons and corporations subject to its operation to pay into the state insurance fund semi-annually the amount of premium determined and fixed by the state liability board of awards for the employment or occupation of such employer, and provides for the administration and distribution of the fund to persons killed or injured in occupations or to their dependents. Plaintiffs call our attention to the fact that the state and its political subdivisions are required by Section 16 to pay a fixed part (one per cent, of their payrolls), while all other persons or corporations subject to the provision of the law pay in accordance with the rate fixed by the board after classification of the employment involved and ascertainment of the degree of hazard.
It is contended, substantially, that the difference • in the method, by which the amount to be paid by the state and its subdivisions is ascertained from that by which the amount to be paid by all other employers is ascertained, renders Sections 15 and 16 of the act unconstitutional. Plaintiffs argue that those sections provide for a discrimination which is unauthorized by Section 35, Article II of the Constitution.
It is to be observed that the act referred to is amendatory of the act of May 31, 1911 (102 O. L., 524). The latter statute provided for the creation of a state liability board of awards which should *80 establish a state insurance fund from premiums paid by employers and employes in the manner provided in the act. It was a humanitarian measure, passed in response to a widespread public belief that the action for personal injuries, by the employe against employer, no longer furnished a real remedy, and that it did not meet the economic and social requirements which had resulted from modern industrialism.
This court in State, ex rel, v. Creamer, 85 Ohio St., 349, in upholding the constitutionality of that statute, pointed out that it was not compulsory or coercive, but that, while it did not compel the employer and employe to operate under its provisions, inducements were held out in the enactment to facilitate and make desirable its acceptance by both. The general scheme of the law and the provisions for the collection, control and disbursement by the state, of the insurance fund provided for by its terms, were sustained as a valid exercise of the police power by the legislature, as the depositary of the legislative power of the state. After the enactment and the decision just referred to, Section 35, Article II, was adopted by the people as an amendment to the Constitution. The obvious purpose of the amendment was to empower the legislature to enlarge the scope of, and to fortify the purpose intended to be accomplished in, the original act. The section enables the legislature to pass laws “establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms gnd conditions upon which payments shall be made *81 therefrom.” It is manifest that the purpose was to leave no doubt as to the power of the legislature to pass a compulsory act providing for an insurance fund which should be contributed to by employers only. The section further provides that the laws so passed may provide for the taking away of any or all rights of action or defenses from employes and employers subject to certain conditions named. It is then provided that laws may be passed establishing a board which may be empowered to classify all occupations according to the degree of hazard, to fix rates of contribution to such fund according to such classification and to collect, administer and distribute such fund and determine all rights of claimants thereto.
It is argued that the employes of the state and its subdivisions are included in the occupations referred to in Section 35, and must be included within the provisions of any law with reference to their classification.
There are two complete sentences in Section 35 and each confers authority to prescribe a complete plan. The first authorizes the establishment of the state insurance fund and the determination of the terms and conditions on which payments shall be made therefrom. The second permits the classification of occupations and the distribution of the fund. The state and its subdivisions and public employes are entirely distinct from employers and employes engaged in private business occupations. It may well be doubted whether the term “occupation” can be properly applied to the duties of one *82 in the service of the state. The state and its subdivisions are not engaged in an occupation in the usual acceptation of that term. The political subdivisions of the state are merely instrumentalities to carry out the purposes of government, and their liabilities are entirely different in their nature and scope from those of employers in private business. Those liabilities are, very largely, purely statutory. It is to be noted that the statute in question in this case was not enacted to enlarge liability, but to provide compensation for injuries to employes without reference to any legal liability, “provided the same was not purposely self-inflicted.” It is apparent that the general assembly regarded the state, its subdivisions and employes in the separate and distinct respects above indicated. Section 20 of the law provides that the board shall keep a separate account of the money paid into the state insurance fund by the state and its subdivisions and the disbursements therefrom on account of injuries to public employes. The board is further required by Section 17 to communicate to the general assembly on the first day of each regular session an estimate of the amount necessary to be contributed to the fund by the state during the next two years. These provisions are obviously for the purpose of enabling the legislature to provide such an insurance fund for the employes of the state and its subdivisions as would be sufficient to maintain the separate account above indicated. We think it clear that there has been no conflict raised between the sections of the statute named and the constitutional provision quoted. The maintenance and conduct *83 of an insurance fund by the state for the purposes above described would also be sustained as a valid exercise of the police power. State, ex rel., v. Creamer, supra. Nor do we find that this statute offends Section 26 of Article II of the Constitution. It is uniform in its operation throughout the state. It brings within its terms all employers and employes within its reason and operates equally upon all.
The authorities agree that a statute is general and uniform if it operates equally upon every person and locality within the circumstances covered by the act, and when a classification has a reasonable basis it is not invalid merely because not made with exactness or because in practice it may result in some inequality. Lindsley v. Natural Carbonic Gas Co., 220 U. S., 61; City of Cincinnati v. Steinkamp, Trustee, 54 Ohio St., 284, 295; State, ex rel., v. Creamer, 85 Ohio St., 349, 405.
It is further contended that by this statute the public funds are diverted from the purpose for which they were levied and collected, in contravention of Section 5 of Article XII of the Constitution, which provides that no tax shall be levied, except in pursuance of law; and every law imposing a tax, shall state, distinctly, the object of the same, to which only, it shall be applied. The case of State, ex rel., v. Edmondson, 89 Ohio St., 351, is cited in support of this view. In that case the law of April 2, 1908, provided for the creation of a fund by each county for the relief of its own blind. The blind fund of each of the several counties was created by levy expressly provided for by the stat *84 ute, which distinctly stated “the object of the same.” Section 8 of the law of 1913 on the same subject required the treasurers of the different counties to transfer to the state treasurer all moneys in their possession, or that might come into their possession, under the law of 1908, and the law of 1913 provided for the use and distribution of these moneys as part of a fund to be expended for the purposes of the entire state. It was held that this diversion of the taxes levied by the different counties pursuant to law was a violation of the provisions of the constitution quoted above.
No such invalidity exists in the act we have under examination. It fixes a certain charge or debt which is to be paid by the several subdivisions named, the amount of which is to be deducted from the taxes collected before they are distributed by the proper ministerial officers. The maintenance of contingent and general funds for general purposes is provided for by statutes which are familiar. The municipal and other subdivisions are fully empowered to raise such funds. It would be wholly impracticable to specifically name in the different budgets the amount to be raised for each specific item. There are many incidental charges which are necessarily taken care of out of the funds of the character referred to as the needs arise. The fact that the amount raised does not meet the exact requirements from time to time and that some inconvenience may arise does not affect the validity of the statutory requirements. These provisions and the procedure required to be followed pursuant thereto are fully detailed in the briefs of coun *85 sei. It was the duty of the taxing officers of the different subdivisions to provide for such general and contingent funds in accordance with the provisions of the law. Commrs. of Champaign County v. Church, etc., Admr., 62 Ohio St., 318; Board of Health v. Greenville, 86 Ohio St., 1; Brissell et al. v. State, ex rel., 87 Ohio St., 154, 168.
Finding no error in the record the judgments below are affirmed.

Judgments affirmed.

Nichols, C. J., Donahue, Wanamaker, Newman and Wilkin. JJ., concur.